IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

RONDA L.,

    Plaintiff,

v.                                                     CIVIL ACTION NO. 3:22-cv-00457

MARTIN J. O'MALLEY
Commissioner of Social Security,[1]

    Defendant.

**PROPOSED FINDINGS & RECOMMENDATION**

Plaintiff Ronda L. ("Claimant") seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–33. By standing order, this matter was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 4.) Pending before this Court are Claimant's *Brief – Social Security* (ECF No. 12), and the Commissioner's *Brief in Support of Defendant's Decision* (ECF No. 13). Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Claimant's request to reverse the Commissioner's decision (ECF No. 11), **DENY** the Commissioner's request to

---

[1] Commissioner O'Malley was substituted in place of Acting Commissioner Kilolo Kijakazi following O'Malley's appointment on December 20, 2023.

affirm his decision (ECF No. 12), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

I.   BACKGROUND

   *A.   Information about Claimant and Procedural History of Claim*

Claimant was 50 years old at the time of her alleged disability onset date and 53 years old on the date of the decision by the Administrative Law Judge ("ALJ") Maria Hodges. (Tr. 31, 191.) [2] She has a high school education, and also has completed vocational programs for a beautician license and a CNA license. (Tr. 46-47.) She was previously employed at Rite Aid as a store laborer and as a return-to-factory clerk. (Tr. 31, 58, 194-196.) Claimant alleges that she became disabled on June 5, 2019, due to narcolepsy and obstructive sleep apnea. (Tr. 51.)

Claimant filed her application for benefits on February 6, 2020. (Tr. 22, 191.) Her claim was initially denied on May 11, 2020, and again upon reconsideration on September 4, 2020. (Tr. 65-73, 75-85.) Thereafter, on October 8, 2020, Claimant filed a written request for hearing. (Tr. 107-108.) An administrative hearing was held by telephone before ALJ Hodges on February 17, 2022. (Tr. 43.) On March 9, 2022, the ALJ entered an unfavorable decision. (Tr. 22-33.) Claimant then sought review of the ALJ's decision by the Appeals Council on March 23, 2022. (Tr. 185-187.) The Appeals Council denied Claimant's request for review on August 23, 2022, and the ALJ's decision became the final decision of the Commissioner on that date. (Tr. 1.)

---

[2] All references to "Tr." refer to the Transcript of Proceedings filed in this action at ECF No. 9.

Claimant timely brought the present action on October 18, 2022, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) The Commissioner filed the transcript of the administrative proceedings on January 24, 2023. (ECF No. 9.) Claimant subsequently filed her *Brief – Social Security* (ECF No. 12) on April 10, 2023, and the Commissioner filed his *Brief in Support of Defendant's Decision* (ECF No. 13) on May 9, 2023. Additionally, Claimant filed a *Reply* on May 22, 2023. (ECF No. 14.) As such, this matter is fully briefed and ripe for adjudication.

### B. *Relevant Evidence*

The undersigned has considered all evidence of record, including the relevant medical evidence, pertaining to Claimant's arguments and summarizes the relevant portions[3] here for the convenience of the United States District Judge.

#### 1. *Treatment Records*

Prior to the relevant period, Claimant had an initial appointment at Valley Health on January 2019 to establish care, where she reported experiencing fatigue that was "not new, she has had for many years" (Tr. 381). At a subsequent appointment in May 2019, Claimant reported that she had started a six-week CNA class; on examination, her provider noted that Claimant displayed no decrease in concentrating ability, was in no distress, and was properly oriented to time, place, and person. (Tr. 399-400.)

In July 2019—during the relevant period—Claimant followed up at Valley Health reporting fatigue and issues with energy (Tr. 402). She did, however, also report

---

[3] As Claimant only challenges the ALJ's evaluation of her narcolepsy and obstructive sleep apnea impairments, discussion of the relevant medical evidence herein is limited to those two impairments. (*See generally* ECF No. 12; ECF No. 13 at 4 n.1.)

completion of her CNA classes and that she "started working full time" (Tr. 402). Her physical examination remained unchanged, as she again displayed no distress, normal orientation, and no decrease in concentration (Tr. 403).

Claimant had a sleep study in August 2019, which resulted in a diagnosis of sleep apnea (Tr. 496). In October 2019, Claimant began using a CPAP machine, reporting "[d]oing well" but having difficulties with the mask (Tr. 488). A mask re-fitting was requested, but issues with her mask continued in January 2020 (Tr. 487, 489). By February 2020 Claimant had a new mask, which she reported "worked well" and resolved her insomnia, but she reported that she continued to nap daily (Tr. 484). In March 2020, Claimant had no issues with the mask or fit, and although she reported daytime sleepiness, Claimant had no fatigue on examination, and was alert and oriented (Tr. 482). Claimant underwent a medication change at this appointment, resulting in an increase in her fatigue symptoms in May 2020 (Tr. 480,483). However, her medications were adjusted, and a month later in June 2020 Claimant was alert and oriented with no fatigue, no daytime sleepiness, and "stable" sleep (Tr. 4 78). Claimant was next seen four months later in October 2020, where she reported compliance with her CPAP machine, had a normal physical examination, and had no fatigue or daytime sleepiness (Tr. 500).

In December 2020, Claimant had another sleep study performed, which confirmed a diagnosis for narcolepsy (Tr. 508). Following this study, Claimant was prescribed Sunosi, which appeared effective in controlling her symptoms (Tr. 527). One month later in February 2021, Claimant reported that "Sunosi has been very helpful to stay awake" and that she was sleeping better at night, waking more rested, and no longer napping (Tr. 522). She also reported doing well overall, denied any side effects, and had generally normal physical and mental examinations (Tr. 522-23). Similarly, at follow-up

appointments with sleep specialists in March 2021, she reported that she falls asleep when she sits down, but she also reported improvement with her medication, was fully alert and oriented, and her review of symptoms was negative for daytime sleepiness or fatigue (Tr. 565-66). In April 2021, Claimant reported that she did not feel like her Sunosi was working, but she was sleeping well with her CPAP and was again fully alert and oriented and negative for daytime sleepiness and fatigue (Tr. 567-68). She was prescribed a different medication, Xywav, that further improved her symptoms.

At a subsequent appointment in September 2021, Claimant was alert and oriented, negative for fatigue and daytime sleepiness, and reported that she used her CPAP regularly with improved energy, improved sleep, and wakefulness (Tr. 568, 571).

After the ALJ rendered her decision on March 8, 2022, Claimant submitted additional medical evidence to the Appeals Council. (Tr. 8). These included a January 2022 medical appointment with her sleep specialist, where Claimant reported feeling "[t]he same" (Tr. 15). She reported that she felt tired but not sleepy all day, would get sleepy around 2:30 p.m., and that she took two naps daily (Tr. 15). Her review of symptoms was again negative for fatigue and daytime sleepiness, and on observation she was again alert and oriented (Tr. 15). In February 2022, at her last appointment before the ALJ rendered her decision on March 8, 2022, Claimant reported being off her medication for the past two weeks due to issues with insurance, which caused an increase in her daytime sleepiness (Tr. 13). She continued to be alert and oriented and reported that her CPAP machine was beneficial (Tr. 13).

Claimant also submitted two medical appointments to the Appeals Council after the ALJ's decision on March 8, 2022. Specifically, in late April 2022, Claimant returned for a follow-up appointment and reported tiredness and naps during the day, though she

5

was alert and oriented on examination (Tr. 11). Claimant's condition was generally unchanged in June 2022, when she was again alert and oriented on observation, and reported napping and experiencing tiredness at around 2:00 p.m. (Tr. 9-10).

### 2. *Opinion Evidence*

State-agency consultants Karl G. Hursey, Ph.D., Frank Roman, Ed.D., and Uma Reddy, M.D., all provided medical opinions regarding Claimant's impairments. All three found that Claimant did not have any severe impairments, and had no limitations to her RFC. (Tr. 69, 81-83.) Additionally, a nurse who treated Claimant—Jamie Stoner, APRN— opined that Claimant had "moderate" limitations in her ability to function independently, but either "marked" or "extreme" limitations in interacting with others, using judgment, and understanding, remembering, and carrying out simple job instructions. (Tr. 575-76.)

### 3. *Hearing Testimony*

At the February 17, 2022 hearing before the ALJ, she heard testimony from Claimant, who was represented by counsel, as well as a vocational expert. (Tr. 43). At her hearing, Claimant testified that she was unable to work due to tiredness from narcolepsy and obstructive sleep apnea (Tr. 51). She testified that she took medications and had a CPAP machine that provided occasional improvement in her symptoms, and that she took two naps per day (Tr. 52). However, she further testified that she could perform certain daily activities, including caring for her personal needs and grooming without difficulty, cleaning the house, and watching television (Tr. 52-53).[4]

---

[4] Additionally, in her function reports, she reported that she could occasionally prepare meals, clean the house with breaks, and perform activities like driving, shopping, and handling money (Tr. 236-37, 264-67).

Following Claimant's testimony, the ALJ employed a vocational expert ("VE") to aid her in determining whether Claimant could perform her past relevant work or other work. (Tr. X.) The ALJ asked the VE to classify Claimant's past relevant work, and the VE testified that Claimant's job at Rite Aid is a medium, unskilled position, with a Specific Vocational Preparation ("SVP") of two. (Tr. 58-59.) The ALJ next asked the VE if there would "be any past work" for a hypothetical individual with the same age, education, and work history as Claimant, who was able to perform medium-level work, but should avoid all exposure to the hazards of moving machinery and unprotected heights, occasional interaction with coworkers and supervisors, no interaction with the public, and only occasional changes in the work setting. The VE testified that these limitations would eliminate the laborer position, but that the individual would still be able to work as a "return-to-factory clerk." (Tr. 59-60.)

Next, the ALJ asked the VE if the hypothetical individual could perform other work. The VE testified that there are no transferable skills; however, there would be other jobs in the national economy that the hypothetical individual could perform. (Tr. 59.) The VE provided representative examples of medium, unskilled jobs with an SVP of two, such as a busser/dining room attendant, an automobile detailer, and an agricultural packer. *Id*. The ALJ also asked the VE whether, "if the person could stand and walk one hour at a time for a total of six hours of eight," there would be any impact on "past work." *Id*. The ALJ clarified that the individual would need to sit for "five to ten minutes" after standing and walking for one hour at a time for a total of six out of eight hours. (Tr. 58-60.) The VE responded that his answer would not change with respect to past work, but that the representative examples of other work would be eliminated because this additional limitation would eliminate medium work. (Tr. 60.) However, the individual could

7

perform other unskilled work at a light level of exertion such as "laundry folder, small items," a "hand folder," and laundry linen sorter, all with an SVP of two, as well as a garment packer/bagger, with an SVP of one. (Tr. 60-61.)

In response to questioning from Claimant's counsel, the VE testified that if the hypothetical individual was subject to sudden and unpredictable, yet frequent, "attacks of sleep" during the day which could last between fifteen minutes and two hours at a time, that all competitive employment would be precluded. (Tr. 62.)

### C.  *Sequential Evaluation Process*

An individual unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" is considered to be disabled and thus eligible for benefits. 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step sequential evaluation process to aid in this determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). The ALJ proceeds through each step until making a finding of either "disabled" or "not disabled"; if no finding is made, the analysis advances to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985); *see Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012) ("To establish eligibility for . . . benefits, a claimant must show that he became disabled before his [date last insured].").

At the first step in the sequential evaluation process, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i),

416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ moves on to the second step. At the second step, the ALJ considers the combined severity of the claimant's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ gleans this information from the available medical evidence. *See Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements will result in a finding of "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

Similarly, at the third step, the ALJ determines whether the claimant's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)).

"If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity" ("RFC") before proceeding to the fourth step. *Mascio*, 780 F.3d at 635; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant's RFC reflects "her ability to perform work despite her limitations." *Patterson v. Comm'r*, 846 F.3d 656, 659 (4th Cir. 2017); *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (defining claimant's RFC as "the most the claimant can still do despite physical and mental limitations that affect his ability to work" (alterations and internal quotation marks omitted)); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ "first

9

identif[ies] the individual's functional limitations or restrictions and assess[es] his or her work-related abilities on a function-by-function basis," then "define[s] the claimant's RFC in terms of the exertional levels of work." *Lewis*, 858 F.3d at 862. "In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments . . . including those not labeled severe" as well as "all the claimant's symptoms, including pain, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Monroe*, 826 F.3d at 179 (alterations and internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a).

After assessing the claimant's RFC, the ALJ at the fourth step determines whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Monroe*, 826 F.3d at 180. If she does not, then "the ALJ proceeds to step five." *Lewis*, 858 F.3d at 862. The fifth and final step requires the ALJ to consider the claimant's RFC, age, education, and work experience in order to determine whether she can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this point, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy.'" *Lewis*, 858 F.3d at 862 (quoting *Mascio*, 780 F.3d at 635). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.* (quoting *Mascio*, 780 F.3d at 635). If the claimant can perform other work, the ALJ will find her "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she cannot perform other work, the ALJ will find her "disabled." *Id.*

Applying the sequential evaluation process in this case, the ALJ concluded that Claimant satisfied the insured status requirements and was insured during the relevant time period. (Tr. 24.) She further determined that Claimant had not engaged in substantial gainful activity since the alleged onset of her disability. (Tr. 25.) Next, she found that Claimant's obstructive sleep apnea, narcolepsy, varicosities, irritable bowel syndrome, bipolar disorder generalized anxiety disorder, and panic disorder constituted "severe" impairments. *Id.* However, she found that those impairments, or a combination thereof, failed to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ then formulated the residual functional capacity (RFC), and found that Claimant can perform medium work, but with additional limitations: she must stand/walk one hour at a time for a total of six hours out of a workday, and after standing for one hour, can sit for 5-10 minutes; she should have no exposure to hazards, including moving machinery and unprotected heights; only occasional interaction with coworkers and supervisors, but no interaction with the public; and only occasional changes in the work setting. (Tr. 27.) Upon assessing the RFC, the ALJ determined at step four that Claimant can perform her past job as a return-to-factory clerk; alternatively, the ALJ found at step five that there are other jobs that can be performed within the restrictions of the RFC. (Tr. 31-32.) As a result, the ALJ concluded that Claimant was not under a disability during the relevant time period. (Tr. 32.)

## II.  LEGAL STANDARD

This Court has a narrow role in reviewing the Commissioner's final decision to deny benefits: it "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard."

*Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In other words, this Court "looks to [the] administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* (alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "In reviewing for substantial evidence, [this Court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Even if "reasonable minds [could] differ as to whether a claimant is disabled," this Court upholds the ALJ's decision if it is supported by substantial evidence. *Id.* (quoting *Craig*, 76 F.3d at 589).

## III.   ANALYSIS

Claimant's arguments are essentially twofold. (ECF No. 12.) First, Claimant challenged the RFC determination on the grounds that the ALJ "erred by failing to fully account in the RFC finding for [Claimant's] narcolepsy and obstructive sleep apnea, which she found to be 'severe' impairments." *Id.* at 2. In response, the Commissioner dismissed Claimant's position as "an improper request for this Court to disregard the ALJ's conclusions in favor of her interpretation of the evidence." (ECF No. 13 at 8.) The Commissioner argued that the Court "should decline [Claimant's] invitation to reweigh the evidence, defer to the ALJ's factfinding, and affirm the decision." *Id.*

Claimant's second argument relied upon the Fourth Circuit's opinion in *Dowling v. Comm'r of Soc. Sec.*, 986 F.3d 377 (4th Cir. 2021), which she relied upon to argue that the ALJ committed error by treating her RFC assessment and her evaluation of Claimant's symptoms "as one and the same." (ECF No. 12 at 5.) In response, the Commissioner argued that there is no "per se reversal for errors in expressing the RFC before analyzing Claimant's limitation function by function" in this context and that, because the ALJ's RFC analysis is based upon the record as a whole, includes the narrative discussion required by SSR 96-8p, and contains sufficient information to allow meaningful review. (ECF No. 13 at 8-9.)

### A. *ALJ's RFC Determination*

Turning to Claimant's first argument, the core issue is whether the ALJ discredited Claimant's subjective symptoms by considering both the objective medical evidence and "*other evidence*"[5] and "built an accurate and logical bridge" between her RFC findings and the record evidence as a whole. *See* 20 C.F.R. § 404.1529(c); SSR 16-3p. *See also Arakas v. Soc. Sec.*, 983 F.3d 83 (4th Cir. 2020) (requiring the ALJ to build "an accurate and logical bridge" between the evidence and her findings).

Claimant overstated the scope of the ALJ's decision; the ALJ did not solely confine her analysis to the objective medical evidence of Claimant's treatment, but rather considered "other evidence," including Claimant's own subjective allegations of feeling

---

[5] As Claimant explained in her *Brief*, the "other evidence" listed in the applicable regulations includes statements from medical and non-medical sources, as well as "other factors" such as the Claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken; treatment, other than medication; work history; and any other factors concerning her functional limitations and restrictions due to pain or other symptoms. (*See* ECF No. 12 at 4 (citing 20 C.F.R. § 404.1529(c); SSR 16-3p).)

tired constantly and struggling to stay awake. (*See* Tr. 27.) In fact, the ALJ discussed subjective record evidence at length. First, the ALJ discussed Claimant's subjective testimony regarding her impairments, as follows:

> She is unable to work because she is tired constantly, falls asleep all the time, is constantly nervous, and is bipolar. She has wrecked three times while driving and cannot be around people due to her nerves. The claimant takes medication for narcolepsy and has a CPAP but does not need oxygen during the day. She stated her treatment does not help very much and she still falls asleep, taking two naps daily for a couple of hours. The claimant sleeps seven to eight hours nightly and during the day, she "piddles" around the house and mostly watches television. She can follow the programs but at times has problems because she is so tired. . . . At times she has trouble standing/walking and estimated she could stand/walk maybe an hour or so.

(Tr. 28.) The ALJ then compared this Claimant's testimony to the relevant medical history in great detail. (Tr. 24-32.)

Additionally, the ALJ also compared Claimant's subjective complaints with "other evidence" of record. For example, the ALJ explained that Claimant was frequently noncompliant with her treatment plan. (Tr. 27-29.) In March 2019, for instance, Claimant was scheduled for a sleep study with Dr. Stultz but had to reschedule "due to wanting to complete a CNA class." (Tr. 28.) Claimant presented to Stultz Sleep and Behavioral Health in June 2019 and reported doing well with treatment in October 2019; after that, however, "she did not return for treatment until January 2020." *Id*. While Claimant was diagnosed with narcolepsy and a history of obstructive sleep apnea during a December 2020 exam, the ALJ noted that Claimant reported she had not taken her prescribed medication "for two weeks prior to the exam." *Id*. The ALJ next explained that Claimant's statements about the intensity, persistence, and limiting effects of her symptoms were internally inconsistent. For instance, in July 2019—one month after her alleged onset date of June 14, 2019—Claimant reported finishing six-weeks of CNA classes and beginning full-time work. (Tr. 29.)

The problem, however, is that the decision is not sufficiently detailed and specific to enable the Court to trace "an accurate and logical bridge" between the evidence and the ALJ's findings. (*See* Tr. 25- 30). The ALJ did not sufficiently address why, how, or in what way an additional allowance in the RFC "to sit for five to ten minutes every hour" would adequately address Claimant's specific narcolepsy and obstructive sleep apnea symptoms—including Claimant's testimony that she needed to take two naps per day lasting for 15 minutes *up to two hours* at a time. (Tr. 32, 52.) This allowance also ignored Claimant's testimony stating "I just fall asleep . . . . I don't schedule it," and that in between naps, there are times where she would fall asleep during the day. (Tr. 15, 55.)

Furthermore, while the ALJ pointed to evidence that Claimant responded to her medication at times, the ALJ largely sidestepped record evidence that Claimant went through trials of different types of medication, including a switch from Sunosi to Xyway, and reported that the latter lost effectiveness. Likewise, the ALJ's mention of Claimant being "off her medication" for two weeks ignored evidence of compliance, and that Claimant attributed this single instance of noncompliance to issues with insurance. (Tr. 13.) Without more, the Court's § 405(g) review is categorically frustrated. Like the ALJ in Monroe, therefore, the ALJ's decision did not demonstrate a full consideration of the extent to which Claimant's alleged fatigue and naps affected her ability to complete an eight-hour workday. *See Monroe v. Colvin*, 826 F.3d 176, 187-90 (4th Cir. 2016).

Thus, while echoing the Fourth Circuit's clarification that there is no "per se rule" requiring remand for not performing an explicit function-by-function analysis, here the undersigned **FINDS** that the ALJ's discussion of the Claimant's narcolepsy and obstructive sleep apnea in the context of the ALJ's RFC limitations was deficient pursuant to this standard. The ALJ's RFC allowance—permitting Claimant to sit once per hour for

15

five to ten minutes—is not tethered to the evidence by "an accurate and logical bridge" explaining the basis for the ALJ's determination, the Court is stymied in its ability to determine if the decision is supported by substantial evidence. *Monroe*, 826 F.3d at 187-90. On further consideration,[6] the ALJ must "show her work" and demonstrate a logical link between her RFC and the evidence, particularly as it relates to evidence of her sudden loss of consciousness and fatigue. *Id.* Accordingly, the undersigned respectfully recommends that Claimant's request for remand on this ground be **GRANTED**.

### B.     *Applicable Regulatory Framework*

Claimant contends that remand is required pursuant to the Fourth Circuit's holding in *Dowling*, 986 F.3d at 387. She explained that in *Dowling,* the Fourth Circuit found that an ALJ failed to cite to two essential regulatory frameworks in assessing the appellant's RFC—§ 404.1545 and SSR 96-8p—beyond a single boilerplate recitation that preceded the actual RFC analysis. (ECF No. 12 at 5-6 (citing *Dowling*, 986 F.3d at 387).) Claimant further asserted that the ALJ in *Dowling* also erred when he "did not indicate that his RFC assessment was rooted in a function-by-function analysis of how Appellant's impairments impacted her ability to work." *Id.* The Fourth Circuit found that, because "an RFC assessment is a separate and distinct inquiry from a symptom evaluation," the ALJ erred "by treating them as one and the same." *Id.* at 5. Claimant explained that here, just as in *Dowling*, "the ALJ's only reference to § 404.1545 and SSR 96-8p is in the boilerplate introductory section on page 3 of her decision." (ECF No. 12 at 6 (citing Tr. 24).)

---

[6] Finally, in light of the recommendations set forth above, Claimant's argument—that the Appeals Council erred in finding that Claimant's evidence from Stultz Sleep and Behavioral Health would not change the outcome of the decision—is moot

The Commissioner's response focused upon the fact that the Fourth Circuit has not adopted "a rule of per se reversal" for errors in expressing the RFC *before* analyzing Claimant's limitation function by function. (Tr. 13.) The Commissioner argued that "the Fourth Circuit has held that remand is not required when the ALJ's RFC analysis includes the narrative discussion required by SSR 96-8p and contains sufficient information to allow meaningful review." (Tr. 13 at 12 (citing SSR 96-8p, 1996 WL 374184, at *7; *Monroe*, 826 F.3d at 189).) In light of the undersigned's finding in subsection III.A., *supra*, the RFC does not contain sufficient information to allow meaningful review. Accordingly, the undersigned respectfully recommends that Claimant's request for remand on this ground be **GRANTED**.

## IV.   RECOMMENDATION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Claimant's request to reverse the Commissioner's decision (ECF No. 11), **DENY** the Commissioner's request to affirm his decision (ECF No. 12), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.

Extension of this time period may be granted for good cause shown. Copies of any objections shall be served on opposing parties and provided to Judge Chambers.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

ENTER:　　February 27, 2023

Dwane L. Tinsley
United States Magistrate Judge